**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **KRISTEN MORALES,**<br>**Plaintiff,**<br>**v.** | * * * * | **CIVIL ACTION NO.:**<br>**2:21-cv-1992** |
| **CITY OF NEW ORLEANS, OFFICE OF OIG THROUGH ED MICHEL, INTERIM INSPECTOR GENERAL, AND BOBBIE JONES.,**<br>**Defendants.** | * * * * * * * | **SECTION: L**<br>**JUDGE ELDON E. FALLON**<br><br>**MAGISTRATE "5"**<br>**JUDGE MICHAEL B. NORTH** |
| ************************************ | * | ****************************** |

**PLAINTIFF KRISTEN MORALES'S OBJECTIONS TO DEFENDANTS' STATEMENTS OF UNCONTESTED FACTS**

Pursuant to Local Rule 56.2 Morales provides the following objections to the Defendants' Statement of Uncontested Facts asserting that the fact is disputed or that the material cited do not support the claimed facts asserted by Defendants and submits that the following in support of same. to the following Statements proposed as uncontested facts.

## I. Plaintiff's Response to Defendants Proposed Statements of Uncontested Facts.

1. Plaintiff Kristen Morales was formerly employed as a Criminal Investigator with the OIG.
   - **No objection**.
2. On or around December 15, 2020, the OIG placed Plaintiff on emergency suspension and provided her written notice of suspension and pre-termination hearing after discovering that Plaintiff had given away an OIG iPhone to a private individual without authorization and after she lacked candor when questioned about it.

- **Objection**. Morales was not provided with written notice of suspension and pre-termination hearing on December 15; rather, after she appeared to the office on December 14, from Ed Michel advising that she had to report to the office by 3:00 p.m. and bring all of her files and equipment, that she was being suspended. Michel advised that she would be told the reason for her suspension when she arrived. After Morales arrived she was not presented with reasons for her suspension and was told she would receive the letter within five days.[1] Morales received the letter on December 17, 2021.[2] Moreover, the letter did not reference a "lack of candor" with respect to the iPhone questioning, but only with respect to the Heisman Trophy ceremony (Count III) which the New Orleans Civil Service Commission ("CSC") found was not proper grounds for termination.[3]

3. On January 7, 2021, Plaintiff was afforded a pre-termination hearing where she was represented by counsel and allowed to offer any evidence and argument in her defense.

    - **Objection.** The pre-termination hearing on January 7, 2021, did not offer Morales an opportunity to litigate, or present evidence on, her federal employment law claims that are the subject of this lawsuit. This was a meeting internally with OIG where she was allowed to present evidence in her defense to the claims in the suspension letter.[4]

---

[1] See Morales Exhibit 3 June 22, 2021, transcript at p. 497:1-13; 497:21-498:17.
[2] See Morales Exhibit 4, Charge of Discrimination and Amended Charge of Discrimination at page 6.
[3] See Morales Exhibit 5 Suspension and Termination Letters, at p.2-3; 5 and Termination letter at p.2-3 and p. 5-6.
[4] Morales Exhibit 6, Transcript of April 9, 2021, testimony where OIG objected to inclusion of Morales's January 7, 2021, letter into evidence at p.102:1-104:7. See also Morales Exhibit 2, all exhibits included in the Civil Service Appeal record. The exhibit clearly demonstrates that the January 7, 2021 letter attached as Defendants Exhibit A(2) was never admitted as evidence.

4. At her pre-termination hearing, Plaintiff argued, amongst other things, that she was being suspended and terminated "in retaliation for exercising my right as a Civil Servant to file an appeal; my right as a City of New Orleans employee to file grievances for the harassment by the OIG, and my federally protected right to file a charge with the EEOC and not suffer retaliation" and that she was being "punish[ed] for my whistleblowing activities.".

    - **Objection.** On January 7, 2021, Morales met with OIG employees for a pre-termination hearing. Morales had counsel present, the only documentation that Defendants cite to as evidence that Morales litigated her constitutional, federal, and state law claims is a response she provided Ed Michel during her January 7, 2021, meeting. Morales was terminated following the hearing and filed an appeal to the Civil Service Commission for her suspension and termination. During the civil service hearing Defendants objected to the inclusion of Morales' Response and Statement presented at the pre-termination hearing on January 7, 2021. Consequently, the statement was not entered into the record for the Civil Service appeal.[5]

5. But Plaintiff offered no evidence that she had authorization to give away the OIG iPhone, and the OIG terminated her employment.

    - Objection. Defendants' statement is misleading concerning the burden of proof and the law applied to a civil service case. The burden of proof is on the Appointing Authority to prove by a preponderance of the evidence that 1) the occurrence of the complained of activity, and 2) that the conduct

[5] *Id*.

      complained of impaired the efficiency of the public service in which the appointing authority is engaged. The Commission has a duty to decide independently from the facts presented in the record whether the appointing authority carried its legally imposed burden of proving by a preponderance of evidence that it had good or lawful cause for suspending and terminating the classified employee and, if so, whether such discipline was commensurate with the dereliction.[6]

6. As a classified employee, Plaintiff appealed her suspension and termination to the New Orleans Civil Service Commission.

   - No objection to the fact that Morales filed an appeal for her suspension and termination. However, Morales did not allege discrimination, retaliation, or whistleblowing in her Civil Service Appeal; and Defendants objected to including Morales's January 7, 2021, letter as an exhibit at the hearing. Consequently, the letter was not entered into the record, and Morales' federal employment law claims were not properly litigated.[7] Moreover, Morales Civil Service Appeals do not allege discrimination, the Civil Service rules included on the second page of the appeal require that an employee who alleges discrimination in accordance with Sections 4.5 and 4.6 must include a statement identifying the type of discrimination, the names of persons who committed discriminatory acts, the date of such acts

[6] Defendants Exhibit A(4) at p. 3 of Decision by Civil Service Commission (p125 of 257 Doc 59-2).

[7] Morales Exhibit 6, Transcript of April 9, 2021, testimony where OIG objected to inclusion of Morales's January 7, 2021, letter into evidence at p.102:1-104:7. See also Morales Exhibit 2, including all exhibits included in the Civil Service Appeal record. The exhibit clearly demonstrates that the January 7, 2021 letter attached as Defendants Exhibit A(2) was never admitted as evidence. See also Morales Exhibit 7, Appeals to her Suspension and Termination.

and where and when they occurred.[8] When an employee alleges discrimination in a civil service appeal the burden of proof on appeal as to the facts are on the appellant.[9]

7. At a three-day hearing before Civil Service, Plaintiff again argued that the OIG's reasons for termination were false and that the OIG had suspended and terminated her for improper reasons, including discrimination and in retaliation for lodging complaints, grievances, and an EEOC Charge and that OIG personnel were punishing her for whistleblowing activities.

- **Objection**, Morales did not allege, and the referee did not decide, claims of discrimination, retaliation, or whistleblowing in Morales's CSC appeal. Defendants fail to cite any testimony or evidence that demonstrates their statement is supported by the record. Defendants continue to cite the January 7, 2021, letter from Morales that was never included as an exhibit in the civil service hearing. The burden of proof is on the Appointing Authority to demonstrate that Morales was disciplined for cause. Moreover, the grounds for termination included in the CSC ruling and Hearing Examiners report were only related to the iPhone. The Hearing Examiner Report states:

> **"[w]hile the termination letter references multiple policy violations, the Appointing Authority candidly admitted that the decision to terminate the appellant was based on the first listed reason found in the termination letter as**

[8] Morales Exhibit 7, Civil Service Appeals at p.3 and 22.
[9] *Id*.

**follows: (I) Giving an iPhone, which was purchased and owned by the Office of Inspector General (OIG), to a private individual who had no official connection to the OIG nor the City of New Orleans, which violates Policy Memorandum 60(R) and Louisiana."[10]**

The CSC found the remaining claims for counts II through IV and VI as follows:[11]

- **II**. The OIG failed to establish Morales engaged in misconduct or that the incident justified termination for its claim that she violated Covid protocols by invading Bonney's space; and that the OIG "should have counseled both parties and instructed them to work with each other rather than making mounts out of mole hills."[12]
- **III**. The OIG failed to establish that Morales accepted a gift for personal benefit in violation policy.[13] The Examiner found that the OIG's analysis of CAO policy 84(R)(q) was overly broad and a superficial analysis of policy and law.[14] It was improper for the Interim Inspector General (Michel) to dredge up a past incident that was previously addressed and disposed of by his predecessor and

---

[10] See Morales Exhibit 7, civil service appeal; Morales Exhibit 6, transcript showing that the letter was not admitted into evidence, Exhibit 2, all exhibits at the Civil Service hearing demonstrating that the January 7, 2021 letter is not included as an exhibit. See also Defendants Exhibit A(3) at p.1 (p. 94 of 257 Doc 59-2).

[11] Civil Service Hearing Examiners Report, attached as Exhibit A(3) to Defendants' Motion, p.12-23 (p.105-116 Doc 59-2).

[12] Defendants Exhibit A(3) p. 14 (p. 107 of 257 Doc 59-2).

[13] Defendants Exhibit A(3) p. 16 (p.109 of 257 Doc 59-2).

[14] Defendants Exhibit A(3) p. 16 (p.109 of 257 Doc 59-2).

that there was no lack of candor regarding the circumstances of Morales's ride to the Heisman Trophy ceremony.[15]

- **IV**. The OIG acted arbitrarily and abused its discretion by ignoring the fact that Morales was asking for an exemption to live outside the Parish and chose to use it as additional justification for discipline. The decision finds that the submission of a form does not justify disciplinary action without evidence of an intent to circumvent the ordinance and a refusal to comply once placed on notice.[16]
- **V**. The OIG letters for suspension and termination allege that Morales violated policy memorandum 83(R) by Retaliating and Threatening Retaliation Against other employees.[17] The Hearing Examiner Report, which was adopted by the Commission found that: Michel testified that Morales filed repetitive unfounded claims, which he considered a pattern and practice calculated to disrupt the office. However, he provided no testimony supporting his conclusion. Therefore, the Appointing Authority has failed to establish that Morales's exercise of her right to utilize the City's internal grievance procedure was an act of misconduct that justified disciplinary action.[18]

8. On December 17, 2021, the Civil Service Hearing Examiner issued a detailed Report recommending that Plaintiff's suspension and termination be upheld.

[15] Defendants Exhibit A(3) p. 16 and 18 (p.109-111 of 257 Doc 59-2).
[16] Defendants Exhibit A(3) p. 23(p.116 of 257 Doc 59-2)
[17] See Morales Exhibit 5.
[18] Defendants Exhibit A(3) at p. 29 (p.122 of 257 Doc 59-2).

- **Objection**. The hearing officer's report recommended that Morales's suspension and termination be upheld solely related to the allegation related to the iPhone.[19]

9. In his report, the Hearing Examiner evaluated the testimony of each witness and the evidence introduced and held that "Appointing Authority [OIG] has established by a preponderance of evidence that the Appellant violated CAO policy memorandum No. 60 (R), by unilaterally deciding to give an iPhone 4 to a private citizen[.]"

   - **Objection**. The CSC Report only addressed Morales' alleged violation of CAO policy memorandum No. 60(R); the CSC Report explicitly analyzed only city policy and did not decide Morales' claims in her federal complaint.[20]

10. The Hearing Examiner held that Plaintiff "falsely claim[ed] that she was given permission" and her "[h]er contention that she acted with authorization was simply not credible considering that the Appellant's claims were impeached by the testimony of [her own witness] Mr. Schwartz and the statement provided by Ms. Wisdom."

    - **Objection**. Morales did not have an opportunity to cross-examine Ed Quatrevaux or Susanne Wisdom, whose statements, which would have been considered hearsay under the Louisiana Code of Evidence, were used as justification in the CSC Report for a finding of lawful cause to terminate

[19] Defendants Exhibit A(3) at p.1 and p. 29 (p.94 and 122 of 257 Doc 59-2).
[20] Civil Service Commission Decision, attached as Exhibit A(4) to Defendants' Motion.

Morales' employment.[21] The only witnesses at the hearing were: 1) Bill Bonney[22], 2) Mike Centola, 3) Terrence Barrett, 4) Bobbie Jones, 5) Reginald Fournier, 6) Darrell Turner, 7) Ed Michel , 8) Howard Schwartz, 9) Darry Harper, and 10) Morales.[23] Not only was Wisdom never presented as a witness at the hearing, but no exhibits related to Suzanne Lacey Wisdom were entered into evidence.[24] Bonney only testified about his conversation with Wisdom. He stated that Wisdom wasn't interviewed about the cell phone but the claim for the gift of the trip to the Heisman ceremony.[25]

11. The Hearing Examiner held that "complete candor is an essential requirement of [her] position" and that controlling law supported termination for such lack of candor.

- **Objection**. Defendants misleadingly state that controlling law supported termination for lack of candor to imply that an analysis based on the claims in Morales's federal complaint were analyzed. This is not true. The Commission found that based on case law establishing the Appointing Authority's burden of proof for a civil service appeal that the OIG and analysis of the city policy violations that Morales's termination was upheld based on the iPhone allegation.[26] The hearing officer report states the

[21] Defendants Exhibit A(4) at p. 10 (p. 136 of 257 Doc 59-2), see also Morales Exhibit 2 which includes all exhibits from the hearing, there is no statement from Susanne Wisdom.
[22] Morales Exhibit 6 at p. 2 identifying William Bonney as only witness at hearing that day.
[23] Morales Exhibit 3 at p. 2-3 identifying Michael Centola, Terrence Barrett, Bobbie Jones, Reginald Fournier, Darrell Turner, Ed Michel, Howard Schwartz, Darry Harper, and Kristen Morales as the witnesses for June 21 and June 22, 2021, hearing dates.
[24] See Morales Exhibit 2 demonstrating that no statement from Wisdom was included in the record for the hearing.
[25] Morales Exhibit 6, Transcript of hearing on 4.9.21 at p. 35:24-36:13.
[26] Civil Service Commission Decision, attached as Exhibit A(4) to Defendants' Motion, p. 2 and 4 of Decision (p. 124

following regarding the ruling upholding the suspension and termination based solely on the iPhone violation. "The Appointing Authority has established by a preponderance of evidence that the Appellant violated CAO policy memorandum No. 60 (R), by unilaterally deciding to give an iPhone 4 to a private citizen, notwithstanding the fact that the phone had no value and was of no use to the OIG. While it **seems heavy handed to go to such lengths to investigate such a minor infraction,** and it is apparent that the new leadership wanted the Appellant removed because of interpersonal relationships that existed within the office."[27]

12. The Hearing Examiner rejected Plaintiff's claims of discrimination and retaliation by the OIG and held that "Appellant [Morales] cannot use her grievance or filing of an EEOC charge as a shield against separate acts of misconduct."

- **Objection**. This statement is taken out of context to erroneously assert that Morales's federal and state discrimination and relation claims were litigated in her civil service appeal. The Hearing Examiner did not decide as to Morales' claims for discrimination and retaliation; rather, he declined to hear those claims, which Louisiana case law has held the CSC does not have jurisdiction over. The quote is taken from the Hearing Examiners analysis of count V in the suspension and termination letters for failure to follow instructions and insubordination.[28] Morales copied CAO Montano and City Attorney Sunni LeBeouf in emails referencing her grievance which

---

and 126 of 257 Doc 59-2).

[27] Civil Service Commission Decision, attached as Exhibit A(4) to Defendants' Motion, at p. 10 of Report (p.136 of 257 Doc 59-2).

[28] Defendants Exhibit A(4) at p.23 (p.149 of 257 Doc 59-2).

mentioned Morales's involvement in the OIG's criminal investigation of the Hard Rock Hotel.[29] Morales testified that her inclusion of the CAO and City Attorney did not impact the Hard Rock investigation because they were aware that she was the investigator assigned to the matter.[30] The Hearing Examiner report stated that Morales was instructed to refrain from including the CAO and City Attorney on her emails but continued to do so.[31] The Hearing Officer noted that Morales testified that the emails including the CAO and City Attorney included information about her grievance and notice to her employer that she felt she was being retaliated against for filing an charge of discrimination with the EEOC.[32] The quote used by Defendants is in relation to Morales's testimony that she was emailing about her grievance when she sent an email copying the CAO and City Attorney in response to the allegation of insubordination. The Defendants attempt to convince the court that her discrimination and retaliation claims were litigated and ruled on are false and not supported by the record or any evidence submitted with their motion.

13. On January 14, 2022, a three-member panel of the Civil Service Commission adopted the Hearing Examiner's Report and unanimously upheld the OIG's decision to suspend and terminate Plaintiff's employment.

- **Objection**. The Commission upheld the recommendations of the Hearing Examiner to uphold the suspension and termination based on the allegation

[29] Defendants Exhibit A(4) at p.24 (p.150 of 257 Doc 59-2)
[30] *Id*. See also Morales Exhibit 3 at p.554:6-558:16.
[31] Defendant Exhibit A(4) at p. 28, (p.154 of 257 Doc 59-2)
[32] *Id.*

relating to the iPhone. The CSC found the remaining claims for counts II through IV and VI as follows:[33]

- **II**. The OIG failed to establish Morales engaged in misconduct or that the incident justified termination for its claim that she violated Covid protocols by invading Bonney's space; and that the OIG "should have counseled both parties and instructed them to work with each other rather than making mounts out of mole hills."[34]
- **III**. The OIG failed to establish that Morales accepted a gift for personal benefit in violation policy.[35] The Examiner found that the OIG's analysis of CAO policy 84(R)(q) was overly broad and a superficial analysis of policy and law.[36] It was improper for the Interim Inspector General (Michel) to dredge up a past incident that was previously addressed and disposed of by his predecessor and that there was no lack of candor regarding the circumstances of Morales's ride to the Heisman Trophy ceremony.[37]
- **IV**. The OIG acted arbitrarily and abused its discretion by ignoring the fact that Morales was asking for an exemption to live outside the Parish and chose to use it as additional justification for discipline. The decision finds that the submission of a form does not justify

[33] Civil Service Hearing Examiners Report, attached as Exhibit A(3) to Defendants' Motion, p.12-23 (p.105-116 of 257 Doc 59-2) .
[34] Defendants Exhibit A(3) p. 14 (p.107 of 257 Doc 59-2).
[35] Defendants Exhibit A(3) p. 16 (p.109 of 257 Doc 59-2).
[36] Defendants Exhibit A(3) p. 16 (p.109 of 257 Doc 59-2).
[37] Defendants Exhibit A(3) p. 16 and 18 (p.109 and 111 of 257 Doc 59-2).

disciplinary action without evidence of an intent to circumvent the ordinance and a refusal to comply once placed on notice.[38]

- **V**. The OIG letters for suspension and termination allege that Morales violated policy memorandum 83(R) by Retaliating and Threatening Retaliation Against other employees.[39] The Hearing Examiner Report, which was adopted by the Commission found that: Michel testified that Morales filed repetitive unfounded claims, which he considered a pattern and practice calculated to disrupt the office. However, he provided no testimony supporting his conclusion. Therefore, the Appointing Authority has failed to establish that Morales's exercise of her right to utilize the City's internal grievance procedure was an act of misconduct that justified disciplinary action.[40]

14. Plaintiff appealed the Civil Service Commission's Decision to the Louisiana Fourth Circuit Court of Appeal.

    - **Objection**. Morales appealed the ruling of the Commission Decision regarding the iPhone issue.[41]

15. To the appellate court, Plaintiff again argued that the OIG terminated her for improper reasons, that her former OIG co-worker Bobbie Jones "lied" about the iPhone incident, and that her due process rights had been violated because the OIG deprived her of a vested property interest (her employment) and allegedly failed to

---

[38] Defendants Exhibit A(3) p. 23 (p.116 of 257 Doc 59-2)
[39] See Morales Exhibit 5.
[40] Defendants Exhibit A(3) at p. 29 (p.122 of 257 Doc 59-2).
[41] Defendants Exhibit A(5) a p. 21 and 25-26 (p.176 and 180-181 of 257 Doc 59-2).

give her adequate notice and an opportunity to be heard.

- **Objection.** The OIG cites factual statements and misconstrues the arguments made. Morales's brief argues that the OIG failed to meet its burden when applying the facts of the case to the standards for upholding discipline of a civil servant. There was no argument made concerning Morales's federal or state claims present in this litigation and Defendants fail to cite to the hearing record demonstrating that these issues were litigated and decided based on the claims asserted in Morales's federal complaint.[42] Simply put, these issues were never litigated or heard in the Civil Service appeal.

16. The Louisiana Fourth Circuit Court of Appeal affirmed the Civil Service Commission's decision, rejected each of Plaintiff's arguments, and upheld Plaintiff's suspension and termination.

- **Objection**. The Fourth Circuit found that there was "no error in the CSC's finding that Ms. Morales's actions impaired the efficiency of the OIG or its finding that termination was justified. Accordingly, we do not find that the CSC's decision was arbitrary, capricious, or an abuse of discretion."[43] The Court explained that when a classified employee appeals a disciplinary action to the CSC, the following principles apply:

    • The CSC is required "to decide independently from the facts presented whether the appointing authority has a good or lawful cause for taking disciplinary action and, if so,

[42] Defendants Exhibit A(5), Morales's Appeal Brief.
[43] Defendants Exhibit A6 at p. 12 (p.247 of 257 Doc 59-2).

whether punishment is commensurate with the dereliction." *Whitaker v. New Orleans Police Dep't*., 03-0512, p. 2 (La. App 4 Cir. 9/17/03), 863 So.2d 572, 574 (citation omitted).

• The appointing authority has the burden of proof as to the facts. LA. CONST., ART X, § 8(A).

• "The appointing authority must prove by a preponderance of the evidence the occurrence of the complained of activity and prove that the conduct complained of impaired the efficiency of the public service and that it bears a real and substantial relationship to the efficient operation of the public service." *Cittadino v. Dep't of Police*, 558 So.2d 1311, 1315 (La. App. 4th Cir. 1990) (citation omitted).

• The legal basis for the CSC making any change in the appointing authority's disciplinary action is limited to the appointing authority's failure to establish sufficient cause for its disciplinary action. *Branighan v. Dep't of Police*, 362 So.2d 1221, 1222 (La. App. 4th Cir. 1978).

• In this context, the term cause has two components—(i) the occurrence of the complained-of conduct; and (ii) an impairment of public service in which the appointing authority is engaged. *Newkirk v. Sewerage & Water Bd. City of New Orleans*, 485 So.2d 626, 628 (La. App. 4th Cir. 1986) (separately addressing cause and impairment elements);

*Gast v. Dep't of Police*, 13-0781, pp. 3-4 (La. App 4 Cir. 3/13/14), 137 So.3d 731, 733.

• The CSC, thus, must first determine if the appointing authority has met its initial burden—established the occurrence of the complained-of conduct and the impairment. If that initial burden is met, then the CSC must determine if the discipline imposed is commensurate with the misconduct. *Abbott v. New Orleans Police Dep't*, 14-0993, p. 7 (La. App. 4 Cir. 2/11/15), 165 So.3d 191, 197.

- The CSC's final decision is "subject to review on any question of law or fact upon appeal to the court of appeal wherein the commission is located." LA. CONST., ART X, §12(A).[44]
- When a CSC decision is appealed to the 4th Circuit, the applicable standard of review is as follows:

• Appellate courts review civil service cases applying a mixed standard of review, depending on the nature of the issue being addressed. *Pitre v. Dep't of Fire*, 21-0632, p. 7 (La. App. 4 Cir. 4/20/22), 338 So.3d 70, 75 (citing *Russell v. Mosquito Control Bd.,* 06-0346, pp. 7-8 (La. App. 4 Cir. 9/27/06), 941 So.2d 634, 639-40).

• On factual issues, deference should be given to the CSC's factual conclusions. "A reviewing court should apply the

[44] Defendants Exhibit A(6) at p. 7 (p.242 of 257 Doc 59-2).

clearly wrong or manifest error rule prescribed generally for appellate review." *Mathieu v. New Orleans Pub. Library*, 09-2746, p. 5 (La. 10/19/10), 50 So.3d 1259, 1262 (citation omitted).

• On legal issues, an appellate court in CSC cases applies a de novo standard of review. "When the civil service board has committed a reversible legal error, the reviewing court should make its own de novo review of the record and render a judgment on the merits, if possible. A legal error occurs when the lower court applies incorrect principles of law and such errors are prejudicial." *Voltolina v. City of Kenner*, 20-151, pp. 4-5 (La. App. 5 Cir. 12/2/20), 306 So.3d 640, 644 (internal citations omitted).

• On mixed factual and legal issue, the manifest error standard of review applies. In CSC cases, as in other civil cases, mixed questions of law and fact are reviewed under the manifest error standard. *Russell*, 06-0346, p. 8, 941 So.2d at 640 (observing that "a mixed question of fact and law should be accorded great deference by appellate courts under the manifest error standard of review") (citation omitted).

• "Then, the court must evaluate the commission's imposition of a particular disciplinary action to determine if it is both based on legal cause and is commensurate with the

> infraction; the court should not modify the commission's order unless it is arbitrary, capricious, or characterized by abuse of discretion. 'Arbitrary or capricious' means the absence of a rational basis for the action taken; 'abuse of discretion' generally results from a conclusion reached capriciously or in an arbitrary manner." *Mathieu*, 09- 2746, pp. 5-6, 50 So.3d at 1262-63 (internal citations omitted).[45]

- The Louisiana Fourth Circuit Court of Appeal did not conduct a *de novo* review of the CSC findings; the Fourth circuit's review was based on a mixed factual and legal issue applying the manifest error standard.[46]

17. Plaintiff filed an application for re-hearing to the Louisiana Fourth Circuit Court of Appeal—which was denied.

    - Morales filed an application for re-hearing with the Fourth Circuit in accordance with the rules of appellate procedure. The application for rehearing was denied on October 25, 2022.[47]

18. Plaintiff filed a writ application to the Louisiana Supreme Court seeking a reversal of the Louisiana Fourth Circuit Court of Appeal's opinion, and on January 25, 2023, the Louisiana Supreme Court unanimously denied Plaintiff's writ application.

[45] Defendants Exhibit A(6) p. 6-8 (p.241-243 of 257 Doc 59-2).
[46] Appeal Court Opinion attached as Exhibit A (6) to Defendants' Motion at p. 8 (p.243 of 257 Doc 59-2) and also available at *Morales v. Office of Inspector Gen.*, 2022-0216 (La. App. 4 Cir. 10/05/22); 2022 La. App. LEXIS 1716.
[47] Defendants Exhibit A(7) (p.254 of 257 Doc 59-2).

- **Objection**. The Louisiana Supreme Court declined to hear Morales' appeal from the Louisiana Fourth Circuit and did not consider the merits of her claims when it denied her writ application on January 25, 2023.[48]

Respectfully submitted,

***/s/ Stephanie Dovalina***
Stephanie Dovalina, LSBA#31137
700 Camp Street, Ste. 105
New Orleans, LA 70130
Phone No.: (504)528-9500
Mobile: (504) 442-4959
Fax: (504) 353-9516
stephanie@dovalinalawgroup.com
Attorney for Kristen Morales

**Certificate of Service**

I certify that on March 21, 2023, a copy of this filing was served contemporaneously on all attorneys of record via the court's CM/ECF system.

*/s/ Stephanie Dovalina*
Stephanie Dovalina

[48] Defendants Exhibit A(8) (p.255 of 257 Doc 59-2) .