# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **KRISTEN MORALES,** | * | **CIVIL ACTION NO.: 21-CV-01992** |
| **Plaintiff,** | * | |
| **v.** | * | **JUDGE: ELDON E. FALLON** |
| | * | |
| **CITY OF NEW ORLEANS, OFFICE OF OIG** | * | **MAGISTRATE JUDGE:** |
| **THROUGH ED MICHEL, INTERIM** | * | |
| **INSPECTOR GENERAL, AND BOBBIE** | * | **MICHAEL B. NORTH** |
| **JONES.** | * | |
| **Defendants.** | * | **JURY DEMANDED** |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* \* \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PLAINTIFF'S MEMORANDUM IN OPPOSITION
## TO DEFENDANTS 'MOTION FOR SUMMARY JUDGMENT

NOW INTO COURT, through undersigned counsel, comes Plaintiff, KRISTEN MORALES ("Morales"), who respectfully submits this Memorandum in Opposition ("Opposition") to Defendants City of New Orleans ("CNO") Motion for Summary Judgment ("MSJ"). Defendants not only mischaracterize the nature of Morales's claims but also grossly misrepresent material facts, law, and elements of New Orleans Civil Service procedure to this Court. Defendants are seeking to escape liability under flawed interpretations, and misleading applications, of res judicata, collateral estoppel, and Louisiana jurisprudence. Accordingly, for the reasons more fully explained below, Defendants 'MSJ should be denied.

## I.     Facts and Procedural History

### A.  Initial EEOC Charge

Plaintiff, Kristen Morales ("Morales") began her employment with the Office of Inspector General ("OIG") on April 18, 2011.[1] She was the only female on the team of criminal investigators.

In or around late 2018, Morales made an in-house complaint about being treated differently than male colleagues, after which progressive retaliation followed.[2] Morales reported a hostile work environment and the belief that she was being discriminated against to her immediate supervisors.[3] Morales lodged internal complaints against her employer for acts of retaliation through a series of attempts to discredit her, harm her professional reputation, and force her out of her job.[4] One internal complaint was filed on January 15, 2019; however, the ensuing investigation never touched on Morales's concerns of unequal pay and disparate treatment of her male criminal investigator colleagues.[5] On January 23, 2020, Morales filed another internal grievance after which she was retaliated against by removing her from a federal case she was assigned.[6]  In May 2020, Morales learned that her two male colleagues were approved for incentive pay while she was denied, even though they all had the same certifications.[7]

On September 1, 2020, Morales received a Letter of Reprimand ("LOR") for failure to timely enter hours into a timekeeping program.[8] She was attempting to appeal the letter and requested copies of her personnel file but was never provided an answer.[9] She was forced to submit

---

[1] See Morales Separation Notice attached hereto as Exhibit 1.
[2] See Morales Charge of Discrimination and Amended Charge of Discrimination at page 1, attached hereto as Exhibit 2.
[3] *Id.*
[4] *Id.* at p. 2.
[5] Third Supplemental and Amending Complaint, Rec. Doc. 53, at p. 6.
[6] Third Supplemental and Amending Complaint, Rec. Doc. 53, at p. 8.
[7] Exhibit 2, Charge of Discrimination and Amended Charge of Discrimination at page 1-2.
[8] See Letter of Reprimand, attached hereto as Exhibit 3.
[9]  Third Supplemental and Amending Complaint, Rec. Doc. 53, at pp. 12-13.

a Public Records Request, which was also ignored, and forms part of the basis of her whistleblower claim.[10] Later, as Morales was appealing an L.O.R., she submitted a subpoena request for her personnel file which was also denied.[11]

Morales was removed from working on a federal case for which she was the assigned lead criminal investigator for several years after reporting unethical behavior by several New Orleans FBI agents.[12] OIG management failed to inform her that she was removed from the case.[13] On September 9, 2020, Inspector General Derry Harper later stated that Morales would remain on the subject; however, this directive was ignored by Interim Inspector General Ed Michel. These acts made it appear that Morales was negligent in her duties.[14]

Morales's Charge and Complaint allege the following facts concerning reports of illegal and unethical behavior by FBI agents and resulting retaliation from her employer: 1) Morales voiced objections to her supervisors on or around December 5, 2019, when she learned that an FBI agent met with a CNO employee without Morales's involvement and against Morales's requests when the FBI did not have an open case or investigation with the U.S. Attorney's office; [15] 2) Morales's supervisor removed Morales from her cases claiming that the FBI informed OIG that she associated with felons and talked to FBI sources, Morales objected stating that the allegations were false and retaliatory towards her previously voiced objections to FBI agent led actions;[16] 3) Morales reported to her supervisor that a memorandum of interview documented by FBI agents excluded relevant evidence and contained misrepresentations of facts;[17] 4) Despite Morales's

---

[10] Third Supplemental and Amending Complaint, Rec. Doc. 53, at Count 3.
[11] Third Supplemental and Amending Complaint, Rec. Doc. 53, at pp. 12-13.
[12] Exhibit 2, Charge of Discrimination and Amended Charge of Discrimination at p. 2.
[13] *Id.*
[14] *Id.*
[15] Doc 53 Third Supplemental and Amending Complaint at ¶42.
[16] *Id.* at ¶45.
[17] *Id.* at ¶ 46.

requests to her supervisors for assistance she was removed from her cases in retaliation for reporting FBI illegal and unethical behavior;[18] and 5) Morales was not allowed to conduct interviews after she reported the conduct and was also falsely accused by the FBI of recording interviews.[19]

On November 23, 2020, Morales filed a Charge of Discrimination with the EEOC alleging discrimination based on race, sex, and retaliation.[20] The acts above were all contained in this charge of discrimination, do not involve the same set of facts as her suspension and termination letters, and have never been litigated or heard by a court of competent jurisdiction.

### B. The Limited Jurisdiction of the Civil Service Commission

The Civil Service Commission is required "to decide independently from the facts presented whether the appointing authority has a good or lawful cause for taking disciplinary action and, if so, whether punishment is commensurate with the dereliction."[21] The legal basis for the CSC making any change in the appointing authority's disciplinary action is limited to the appointing authority's failure to establish sufficient cause for its disciplinary action.[22] The Civil Service hearing has limited jurisdiction to determine whether the OIG met its burden of proof for Morales's suspension and termination.[23] The burden of proof is on the Appointing Authority to demonstrate that Morales was disciplined for cause.

On December 17, 2021, Morales received a letter of emergency suspension dated December 15, 2020.[24] The letter indicated that she was suspended for policy violations, including

---

[18] *Id.* at ¶ 51.
[19] *Id.* at ¶ 53, 57, 58, and 59.
[20] Exhibit 2, Charge and Amended Chart of Discrimination at p. 1-4.
[21] *Whitaker v. New Orleans Police Dep't.*, 03-0512, p. 2 (La. App 4 Cir. 9/17/03), 863 So.2d 572, 574 (citation omitted).
[22] *Branighan v. Dep't of Police*, 362 So.2d 1221, 1222 (La. App. 4th Cir. 1978).
[23] Defendant OIG' Exhibit A(4) at p. 3 of Decision by Civil Service Commission (p. 125 of 257 Doc 59-2).
[24] See Exhibit 2, Charge of Discrimination and Amended Charge of Discrimination at p. 6.

the giving away an iPhone. The suspension letter did not address issues of discrimination or retaliation. The suspension letter advised Morales that she had a pre-termination hearing set for January 7, 2021, before Michel, and that she could provide copies of any documents for the Department to consider to the pre-termination hearing.[25]

On January 7, 2021, Morales attended an internal pre-termination hearing before Ed Michel, Michael Centola, and William Bonney. The Defendant, City of New Orleans, was not a party to this pre-termination hearing. Even so, the pre-termination hearing did not allow Morales to litigate, or present evidence on, her federal employment law claims that are the subject of this lawsuit. Morales had counsel present, the only documentation that Defendant cites as evidence that Morales litigated her constitutional, federal, and state law claims is a letter that she provided Ed Michel during that meeting. However, Morales's intent of the letter was to provide her employer notice of discrimination and retaliation under federal anti-discrimination and state whistleblower laws.

The OIG terminated Morales on January 7, 2021, immediately following completion of her pre-termination hearing.[26] Morales appealed all six counts of alleged violations.[27] Morales did not allege discrimination or retaliation in her appeal because her November 2020 charge was still pending before the EEOC.[28]

Before the CS hearing, opposing counsel for the OIG filed a motion to quash so that OIG employees, Ed Michel, Michael Centola, and William Bonney, would not be allowed to testify because they did not want Morales to question them on allegations of discrimination and

---

[25] Suspension Letter, attached hereto as Exhibit 4.
[26] Termination Letter, attached hereto as Exhibit 5.
[27] Morales Appeals to Suspension and Termination, attached hereto as Exhibit 6.
[28] Exhibit 6.

retaliation. They noted that the discrimination and retaliation claims were part of Morales's pending EEOC complaint and ***not*** the CS hearing.[29]

The Defendant, CNO, was not a party to the CS hearing. The Civil Service Commission only addresses departments and agencies within the city.

Morales did not allege, and the referee did not decide, claims of discrimination, retaliation, or whistleblowing in Morales's CSC appeal. Defendant fails to cite any testimony or evidence that demonstrates the record their claim. Defendant continues to cite to Morales's January 7, 2021, letter that was never included as an exhibit in the civil service hearing.

On January 14, 2022, Morales received the decision of the City Civil Service Commission denying her appeal based on the iPhone issue alone.[30] **The CSC found the remaining claims for counts II through IV and VI were without merit and on Count IV the OIG acted arbitrarily and abused its discretion.**[31]

Morales filed a notice of appeal on February 7, 2022, which was granted on March 8, 2022.[32] Morales timely filed her appeal brief on May 24, 2022.[33] Morales's appeal requested that the Commissioner's ruling based on the iPhone issue alone be overturned because it was contrary to the law and evidence and was arbitrary and capricious. Defendant, City of New Orleans, was not a party to this appeal.

The Fourth Circuit Court of Appeal affirmed the decision of the CSC on October 5, 2022.[34] On October 19, 2022, Morales submitted an application for rehearing to overturn or modify the

---

[29] OIG Motion to Quash, attached hereto as Exhibit 7.
[30] Defendant OIG's Exhibit A(4) at p. 10 of the Hearing Examiner report (p. 136 of 257 Doc 59-2).
[31] Civil Service Hearing Examiners Report, attached as Exhibit A(3) to Defendant OIG's Motion, p.12-23 (p.105-116 Doc 59-2); p. 14 (p. 107 of 257 Doc 59-2); p. 16 (p. 109 of 257 Doc 59-2; . 16 and 18 (p. 109 and111 of 257 Doc 59-2); p. 23(p. 116 of 257 Doc 59-2); p. 29 (p. 122 of 257 Doc 59-2).
[32] Morales Notice of Appeal, attached hereto as Exhibit 8.
[33] Defendant OIG's Exhibit A(5) at p. 45 of brief (p. 200 of 257 Doc 59-2).
[34] Morales Fourth Circuit Ruling, attached hereto as Exhibit 9

ruling.[35] On October 26, 2022, the application for rehearing was denied.[36] On November 23, 2022, Morales filed a writ application with the Supreme Court of Louisiana.[37] The Louisiana Supreme Court declined to hear Morales's appeal from the Louisiana Fourth Circuit. It did not consider the merits of her claims when it denied her writ application on January 25, 2023.[38]

### C. The Amended EEOC Charge and the Present Suit

Finally, the basis of this suit arises from Morales's EEOC charge filed November 23, 2020, almost a month before her initial suspension.[39] The subsequent retaliatory conduct that encompasses the suspension and termination has become part of this suit but was not the initial claim for discrimination.

Morales included in her charge that, at the hearing for the letter of reprimand on January 22, 2021, Morales impeached Centola, Bonney and Michel who testified that Morales was disciplined for failure to enter her time into wingswept.[40] However, she was able to present evidence that other employees, including Centola, Bonney and Terrence Barrett, all had time missing and were not disciplined.[41]

Furthermore, certain claims in her federal complaint only arose during and after her suspension and termination appeals. Specifically, on May 19, 2021, Bobbie Jones hacked into Morales's private Facebook account while Jones was at work.[42] Jones changed Morales's passwords, locked her out of her account and downloaded Morales's activity.[43] Morales filed a

---

[35] Morales Application for Rehearing, attached hereto as Exhibit 10.
[36] Defendant OIG's Exhibit A(7) (p. 254 of 257 Doc 59-2).
[37] Morales LASC Writ Application, attached hereto as Exhibit 11, at p. 2.
[38] Defendants Exhibit A(8) (p. 255 of 257 Doc 59-2).
[39] Exhibit 2, Charge of Discrimination and Amended Charge of Discrimination at pp. 1-4.
[40] Exhibit 2, Charge of Discrimination and Amended Charge of Discrimination at p. 7.
[41] Exhibit 2, Charge of Discrimination and Amended Charge of Discrimination at p. 7
[42] Third Supplemental and Amending Complaint, Rec. Doc. 53, at pp. 21-22.
[43] Third Supplemental and Amending Complaint, Rec. Doc. 53, at pp. 21-22.

police report for the illegal conduct.[44] Morales asserts that this was part of the retaliatory work environment that she was subject to during her time with the OIG.[45] Morales has suffered ongoing discrimination that began months before the retaliatory conduct of the OIG after filing her charge of discrimination with the EEOC.[46]

Morales amended her charge on May 10, 2021 and included claims that the OIG investigation was opened against her without the Inspector General's knowledge against OIG policy and retaliation claims related to her suspension and termination.[47] The amended charge also included information that after the first day of the civil service hearing, Morales learned OIG interviewed her landlord, confirming that she lived in New Orleans, however, she had provided this information at the pre-termination hearing and it was ignored.[48] One of the documents used as reason for her termination was a copy of the memo from the CAO's office advising the OIG of the November 23, 2020, charge filed with the EEOC.[49] On July 30, 2021, the U.S. Department of Justice Civil Rights Division issued a Notice of Right to Sue.[50]

On October 28, 2021, Morales filed the present suit. The City of New Orleans was never a party to her prior suit and legally could not be a party because of the CSC's limited jurisdiction to agency and department decisions. As such, no court has reviewed her claims against CNO, and granting the current MSJ based on *res judicata* would bar Morales from ever receiving an opportunity to be heard.

---

[44] Third Supplemental and Amending Complaint, Rec. Doc. 53, at pp. 21-22.
[45] Exhibit 2, Charge of Discrimination and Amended Charge of Discrimination at pp. 5-7
[46] Exhibit 2, Charge of Discrimination and Amended Charge of Discrimination at pp. 5-7.
[47] Exhibit 2, Charge of Discrimination and Amended Charge of Discrimination at p. 6.
[48] Exhibit 2, Charge of Discrimination and Amended Charge of Discrimination at p. 6.
[49] Exhibit 2, Charge of Discrimination and Amended Charge of Discrimination at p. 6.
[50] DOJ Notice of Right to Sue, attached hereto as Exhibit 12.

## II. Summary Judgment Standard.

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[51]" An issue is material if its resolution could affect the outcome of the action."[52] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[53] All reasonable inferences are drawn in favor of the non-moving party.[54]

A non-moving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[55] "[U]nsubstantiated assertions are not competent summary judgment evidence."[56]

## III. Law and Analysis.

### A. Neither collateral estoppel nor res judicata bar Morales's claims.

Louisiana's res judicata statute includes collateral estoppel. Under that statute, La. R.S. 13:4231, and Louisiana case law, res judicata and collateral estoppel do not apply if the fact or issue was not properly litigated in the prior action, or if the forum of the prior action lacked jurisdiction to hear the subsequent claims—as explained more fully below.[57] "To have any preclusive effect a judgment must be valid; that is, among other things, it must have been rendered by a court with jurisdiction over the subject matter."[58] Contrary to CNO's spurious arguments, state and federal courts, including the Louisiana 4th Circuit, the Eastern District, and the U.S. 5th

---

[51] Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).
[52] *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[53] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[54] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[55] *Celotex*, 477 U.S. at 322-323.
[56] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).
[57] *Garner v. Giarrusso*, 571 F.2d 1330, 1336 (5th Cir. 1978).
[58] *Kelty v. Brumfield,* 633 So.2d 1210, 1215 (La. 1994)

Circuit, have consistently held that the Civil Service Commission ("CSC") does not have jurisdiction over federal employment-related claims.[59] Notably, "[i]f the court rendering judgment lacks subject matter jurisdiction over a claim or if the procedural rules of the court made it impossible to raise a claim, then it is not precluded."[60] Moreover, the CSC does not have the authority to award general tort damages.[61] Finally, because Title VII provides the legal remedy of punitive damages, there is also a right to a trial by jury.[62]

The United States Fifth Circuit case law holds that res judicata and collateral estoppel should not be rigidly applied, stating that, "both defenses must be qualified or rejected when their use would contravene an overriding public policy or result in manifest injustice."[63] The Louisiana Supreme Court agrees with this argument, stating that "[t]he doctrine of res judicata is stricti juris; any doubt concerning application of the principle of res judicata must be resolved against its application."[64] Collateral estoppel is applicable when "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision."[65] These elements are essential and "must be established beyond all question."[66]

[59] *Id.*; *Winn v. New Orleans City*, CV 12-1307, 2015 WL 10713690, at *3 (E.D. La. Jan. 14, 2015), *aff'd sub nom. Winn v. City of New Orleans*, 620 Fed. Appx. 270 (5th Cir. 2015)(unpublished); *Eberhardt v. Levasseur*, 630 So. 2d 844, 846 (La. App. 4th Cir. 1993), writ denied, 635 So. 2d 1107 (La. 1994).

[60] *Welsh v. Fort Bend Indep. Sch. Dist.,* 860 F.3d 762, 765 (5th Cir. 2017) (quoting *Browning v. Navarro*, 887 F.2d 553, 558 (5th Cir. 1989).

[61] *Stevenson v. Williamson*, 547 F. Supp. 2d 544, 557 (M.D. La. 2008), aff'd, 324 Fed. Appx. 422 (5th Cir. 2009)(unpublished); *Simon v. Board of Commissioners of Port of New Orleans,* 875 So.2d 102, 106 (La. App. 4 Cir. 2004); *Greenleaf v. DHH, Metropolitan Developmental Center,* 594 So.2d 418 (La. App. 1 Cir.1991) *writ denied,* 596 So.2d 102 (La.App. 4 Cir.1992)).

[62] 42 U.S.C. §1981(c).

[63] *Garner*, 571 F.2d at 1336.

[64] *Kelty v. Brumfield*, 633 So.2d 1210, 1215 (La. 1994)

[65] *Jackson v. Frisco Indep. Sch. Dist.*, 789 F.3d 589, 595 (5th Cir. 2015) (*quoting Pace v. Bogalusa City Sch. Bd.,* 403 F.3d 272, 290 (5th Cir.2005); Bradberry v. Jefferson Cnty., Tex., 732 F.3d 540, 549 (5th Cir. 2013)).

[66] *Kelty*, 633 So.2d at 1215.

Moreover, any issues that involve a *different legal standard* will not be considered identical even if the factual setting of both suits may be the same.[67]

As stated, the causes of action asserted in Morales's current lawsuit were never previously litigated in, much less determined by, a court of competent jurisdiction, since the New Orleans Civil Service Commission does not have jurisdiction to hear Morales's federal claims asserted in this lawsuit.[68] Additionally, the Louisiana 4th Circuit has previously held that when a CSC Hearing Examiner dismisses a defense—if a defense is heard, which was not the case for Morales's CSC proceeding—that dismissal does not have a preclusive effect in subsequent litigation.[69] Consequently, the various issues presented in the CSC hearing and the Fourth Circuit are not identical to those presented to this Court. The present suit encompasses issues that came months before the suspension and termination that was central to the CSC hearing and also includes retaliation claims that occurred during and after the CSC hearing. As such, the issues before the court today were never litigated.

Moreover, the legal standard utilized during the CSC hearing and subsequent review by the court of appeals are wholly different from the standards applicable to the current claims. The CSC is required "to decide independently from the facts presented whether the appointing authority has a good or lawful cause for taking disciplinary action and, if so, whether punishment is commensurate with the dereliction."[70] The legal basis for the CSC making any change in the appointing authority's disciplinary action is limited to the appointing authority's failure to

---

[67] *Jackson v. Frisco Indep. Sch. Dist.*, 789 F.3d 589, 595 (5th Cir. 2015) (*quoting B & B Hardware, Inc. v. Hargis Indus., Inc.,* —— U.S. ——, 135 S.Ct. 1293 1306, 191 L.Ed.2d 222 (2015) (emphasis added).

[68] *Id.*

[69] *Eberhardt v. Levasseur*, 630 So. 2d 844, 847 (La. App. 4th Cir. 1993), *writ denied,* 635 So. 2d 1107 (La. 1994).

[70] *Whitaker v. New Orleans Police Dep't.*, 03-0512, p. 2 (La. App 4 Cir. 9/17/03), 863 So.2d 572, 574 (citation omitted).

establish sufficient cause for its disciplinary action.[71] On appeal, the Fourth Circuit Court of

Appeal did not conduct a *de novo* review of the CSC findings, instead the review was based on a

mixed factual and legal issue applying the manifest error standard.[72] As such, the prior proceedings

did not even apply the same legal standard to Morales's federal and state law claims against CNO.

Lastly, denial of the writ by the Louisiana Supreme Court has no precedential value and CNO

mischaracterized this denial as an affirmation. The Louisiana Supreme Court is clear that there is

no precedential value of a writ denial.[73]

### 1. Morales has a right to a jury trial.

In 1991, Congress amended the Civil Rights Act, Title VII, to require a jury trial when a

plaintiff seeks compensatory or punitive damages under 42 U.S.C. 1981a. The amended statute

now reads, in pertinent part:

> **(c) Jury trial. If a complaining party seeks compensatory or punitive damages
> under this section—**
> (1) any party may demand a trial by jury; and
> (2) the court shall not inform the jury of the limitations described in subsection
> (b)(3).[74]

The right to a jury trial cannot be abridged.[75] The New Orleans Civil Service Commission

Rules do not require, or allow for, a jury trial.[76] In this lawsuit, Morales alleges violations of 42

U.S.C. 1981 (Count 6).[77] Morales further asks for compensatory and punitive damages.[78] Morales

---

[71] *Branighan v. Dep't of Police*, 362 So.2d 1221, 1222 (La. App. 4th Cir. 1978).

[72] *Mathieu v. New Orleans Pub. Library*, 09-2746, p. 5 (La. 10/19/10), 50 So.3d 1259, 1262

[73] *See Pitre v. Louisiana Tech Univ.* , 95-1466, p.8 (LA. 5/10/96), 673 So.2d 585, 589; *St. Tammany Manor, Inc. v. Spartan Building Corp.*, 509 So. 2d 424, 428 (La. 1987); *Cutrer v. Mid-Continent Group*, 99-1402 (La. 7/2/99); 747 So. 2d 23, 24 (mem.) (Lemmon, J., concurring) ("The law of the case doctrine does not apply to writ denials."); *see also Marsh Eng'g, Inc. v. Parker*, 96-1434 (La. 9/27/96); 680 So.2d 637, 638 (mem.) (Lemmon, J., concurring) ("[B]ut note that the denial has no res judicata effect in this court on the issue of prescription.").

[74] 42 U.S.C. 1981a(c).

[75] *United States v. Tull*, 481 U.S. 412, 425, 107 S.Ct. 1831 (1097).

[76] *See* Rules of the Civil Service Commission, City of New Orleans, attached hereto as exhibit 13.

[77] Third Supplemental and Amended Complaint, Rec. Doc. 53, at ¶ 125-129 (Count 6).

[78] Third Supplemental and Amended Complaint, Rec. Doc. 53, at pp. 39-40.

claims allow for punitive damages as a remedy, which is considered legal relief and is therefore entitled to a jury trial.[79]

In *Curtis v. Loether*, the Supreme Court affirmed its position of the right to a jury trial stating that "when Congress provides for enforcement of statutory rights in an ordinary civil action in the district courts, where there is obviously no functional justification for denying the jury trial right, a jury trial must be available if the action involves the rights and remedies of the sort typically enforced in an action at law.[80] Title VII specifically states that a plaintiff has the right to a trial by a jury.[81] The Fifth Circuit states that , "[c]ourts must be careful to afford jury trials in accordance with *Lytle* when legal claims are properly joined with Title VII claims.[82]

Based on the plain language of Title VII and the facts and circumstances alleged in Morales's lawsuit, she is entitled to a jury trial, which the New Orleans Civil Service Rules do not provide. Morales was not afforded a jury trial during her CSC hearing or subsequent appeal. Morales requested a jury trial in the instant case and sufficiently plead a prima facie claim under Title VII for disparate treatment on sex and race, and retaliation. Her Title VII claims have not been disposed of in prior litigation because they were never addressed by the Hearing Examiner or the state court of appeals. For these reasons, Morales's Seventh Amendment right to a jury trial would be unduly infringed upon by granting the motion for summary judgment on the sole issue of *res judicata* and collateral estoppel.

---

[79] *Id.* at 422 (*citing Curtis v. Loether,* 415 U.S. 189, 197 (1974)).
[80] 415 U.S. 189, 195 (1974).
[81] 42 U.S.C. § 1981(c).
[82] *Wauhop v. Allied Humble Bank, N.A.,* 926 F.2d 454, 456 (5th Cir. 1991); *see also Lytle v. Houshold Mfg., Inc*., — U.S. —, 110 S.Ct. 1331, 1335, 108 L.Ed. 2d 504 (1990).

## 2. None of Morales's state or federal employment law claims are barred.

CNO seeks to dismiss Morales's Title VII claim for retaliation (Count 1), Title VII claim for discrimination based on gender (Count 5) and race (Count 7), and La. R.S. 23:3301 claim for retaliation and discrimination (Count 8). However, CNO was never a party to the prior litigation and none of these claims were properly litigated before the New Orleans Civil Service Commission or the state court of appeals.

First, the controlling law on this issue comes from the Supreme Court case, *Kremer v. Chemical Construction Corp.* The issue before the court was whether a state judicial determination of no employment discrimination under the state law barred a subsequent federal case under Title VII.[83] After not being rehired, the plaintiff brought a discrimination claim based on religion and national origin to the EEOC.[84] New York law required that the employment discrimination be referred to the NY Human Rights Division which completed a full investigation into the claims.[85] The plaintiff was allowed to present on the record the various charges against his employer, present exhibits, offer testimony of his own and witnesses, and offer rebuttal evidence.[86] The Court also noted that states with fair employment laws could effectively combat employment discrimination and referenced the NY laws as exemplary.[87] The Court concluded that, where the state procedures offer a full and fair opportunity to litigate on the merits, sufficient due process is provided.[88] Here, the CSC and appeal to the Louisiana Fourth Circuit did not offer a full and fair opportunity to

---

[83] 456 U.S. 461, 463, 102 S.Ct. 1883, 72 L.Ed. 2d 262 (1982).
[84] *Id.* at 463.
[85] *Id.*
[86] *Id.* at 484.
[87] *Id.* at 473.
[88] *Id.* at 485

litigate on the merits. Moreover, none of the criteria used to determine whether a party is precluded from relitigating an issue is met in this case, as explained in detail below.[89]

### a. Morales did not have a full opportunity to present her claims of discrimination.

First, the claims in this suit are not identical to the CSC hearing or state court appeal because Morales was never given a full opportunity to present her claims of discrimination. Unlike in *Kremer,* where the NY Human Rights Division completed a full investigation into the plaintiff's discrimination claims, the Hearing Examiner did no such review and did not permit Morales to bring outside issues such as the discrimination and retaliation claims against the OIG. The plaintiff in *Kremer,* was entitled to a "full opportunity to present on the record…his charges against his employer…including the right to submit all exhibits which he wishes to present and testimony of witnesses in addition to his own testimony."[90]

In contrast Morales was not afforded the same opportunity. During Morales's Civil Service hearing, the Hearing Examiner stated plainly, "**I am, as I have stated in emails, this matter will be focused on the allegations contained in the disciplinary letter**…"[91] This is because the New Orleans Civil Service is governed by the "Rules of the Civil Service Commission, City of New Orleans" ("CSC Rules").[92] While the Civil Service Rules state that appeals from dismissals will be heard "in accordance with the Code of Civil Procedure,"[93] the Rules do not reference the Louisiana Code of Civil Procedure, and in some instances, actually conflict with how the Code of Civil Procedure would apply to employment-related disputes if they were filed in district court.

---

[89] *See Jackson v. Frisco Indep. Sch. Dist.*, 789 F.3d 589, 595 (5th Cir. 2015) ("(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision.").
[90] *Kremer,* 456 U.S. at 483 (quoting *State Div. of Human Rights v. New York State Drug Abuse Comm'n,* 59 App. Div. 2d 332, 336, 339 N.Y.S. 2d 541, 544 (1977)).
[91] Transcript, In the Matter of Kristen Morales v. Office of the Inspector General, Docket Number 9234/9240, June 16, 2021, at 11:21-25, attached as Exhibit 14.
[92] *See* La. R.S. 33:2400; *See also* Exhibit 13, Rules of the Civil Service Commission, City of New Orleans.
[93] Exhibit 13, Rules of the Civil Service Commission, City of New Orleans, Rule II, Sec. 4.11(b).

Additionally, the Civil Service Rules mandate that the Commission will initiate a hearing on any appeal within 60 calendar days after the appeal is filed.[94] Notably, there is no opportunity for formal discovery as provided for in the Louisiana Code of Civil Procedure.[95] There is no opportunity, or time, to serve interrogatories, requests for admissions, or requests for the production of documents, as provided for in the Code of Civil Procedure.[96] There is no opportunity to file pre-trial motions or challenge evidence not meeting the Louisiana Code of Evidence requirements. In fact, the "Louisiana Code of Evidence" does not appear in the Civil Service Rules. Rules found in the Louisiana Code of Evidence, such as prohibitions on hearsay and prejudicial evidence, or governance of presumptions, do not exist in the Civil Service Rules.

### b. Morales' claims of discrimination were never litigated

Morales never litigated her claims against the City of New Orleans because they were not parties to the CS hearing. The limited jurisdiction of the New Orleans Civil Service Commission ("CSC") did not allow those claims to be heard. In Morales's case, the CSC summarized its role as follows:

> The Commission has a duty to decide independently from the facts presented in the record whether the appointing authority carried its legally imposed burden of proving by a preponderance of evidence that it had good or lawful cause for suspending and terminating the classified employee and, if so, whether such discipline was commensurate with the dereliction.[97]

The CSC explained that to withstand an appeal, "the appointing authority has the burden of proving by a preponderance of the evidence: 1) the occurrence of the complained of activity, and 2) that that conduct complained of impaired the efficiency of the public service in which the

---

[94] Exhibit 13, Rules of the Civil Service Commission, City of New Orleans, Rule II, Sec. 4.12.
[95] La. Code Civ. Proc. art. 1421, *et seq*.
[96] *Id.*
[97] Civil Service Commission Decision, at p. 11, attached as Exhibit 15 (citing *Abbott v. New Orleans Police Dep't*, 2014-0993 (La. App. 4 Cir. 2/11/15); 165 So.3d 191, 197; *Walters v. Dept, of Police of the City of New Orleans*, 454 So. 2d 106 (La. 1984).

appointing authority is engaged.[98] In *Kremer, res judicata* barred the plaintiff's subsequent suit because discrimination claims were litigated. Here, Morales's claims of discrimination, retaliation and due process were never litigated before the CSC or the state court of appeals. The plaintiff in *Kremer* brought his claim under the NY laws for fair employment and against employment discrimination. Here, Morales was appealing her suspension and termination to the OIG, which the Civil Service Commission oversees. The City of New Orleans was never a party to this appeal and her charges of sex and race discrimination and retaliation from the November EEOC charge were not part of the claims before the CSC. Moreover, additional claims occurring after the appeal to the state court have accrued and are now part of this federal suit.

### c. The claims of discrimination were not necessary to the judgments.

Dismissal on res judicata grounds is not applicable because discrimination claims were not part of the CSC hearing and judgment. The burden of proof was on the Appointing Authority and the Civil Service Commission has a duty to decide independently from the facts presented in the record whether the appointing authority carried its legally imposed burden of proving by a preponderance of the evidence that it had good or lawful cause for suspending and terminating the classified employee and, if so, whether such discipline was commensurate with the dereliction.[99] In *Kremer,* the Court noted that the determination of claims of discrimination was necessary to the judgments in both the administrative proceedings and the state court appeal. Here, Morales's hearing before the CSC and subsequent state court appeal "were nothing more than steps in an administrative challenge" of her dismissal.[100] Moreover, the ruling was decided based on the

---

[98] Exhibit 15, Civil Service Commission Decision, at p. 11 (citing *Gast v. Dep't of Police*, 2013-0781 (La. App. 4 Cir. 03/13/14); 137 So. 3d 731, 733).
[99] Exhibit 15, Civil Service Commission Decision, at p. 11, (citing *Abbott v. New Orleans Police Dep't*, 2014-0993 (La. App. 4 Cir. 2/11/15); 165 So.3d 191, 197; *Walters v. Dept, of Police of the City of New Orleans*, 454 So. 2d 106 (La. 1984).
[100] *Tolefreee v. City of Kansas City, MO.,* 980 F. 2d 1171, 1175 (8th Cir.. 1993).

allegation concerning the iPhone only.[101] Morales was not allowed to raise new issues before the state court; instead, the court of appeal was limited to the evidence that was before the CSC referee.[102] Appealing the board's decision to the state court was another step in the administrative remedies available. Furthermore, at no time did Morales assert any claims against CNO in her appeal; she was only seeking to have the dismissal reversed. The state court of appeals concluded that the reasons for discharging Morales were legitimate; however, it does not foreclose Morales's Title VII claim because a jury could find these reasons were pretext, and Morales would not have been discriminated against and later terminated had it not been for illegitimate racial and gender reasons and retaliation.[103] As stated above, the right to a jury trial cannot be abridged for this very reason.

### d. The legal standards in the two suits are different.

The CSC and Louisiana fourth circuit court of appeals utilized differing standards that did not address Morales's claims before this court. In *Kremer*, the Supreme Court found that the administrative proceedings and state court review were appropriate because of the legal standards applied.[104] The investigative portion of the administrative proceeding used a probable cause standard on whether to believe the plaintiff's allegations of discrimination were true and the judicial review is done to ensure that the plaintiff's procedural rights were upheld and the determination was not arbitrary and capricious.[105] In *Kremer,* the legal standard is wholly focused on the issue of discrimination; however, Morales was not afforded the same type of review. As

---

[101] Defendant OIG Exhibit A(4) p. 2 (p. 124 of 257 Doc 59-2), Defendant OIG Exhibit A(3) at p. 1(p. 94 of 257 Doc 59-2), and Defendant OIG Exhibit A(6) at p. 6 (p. 241 of 257 Doc 59-2).
[102] *Voltolina v. City of Kenner*, 20-151, pp. 4-5 (La. App. 5 Cir. 12/2/20), 306 So.3d 640, 644; *Russell v. Mosquito Control Bd.,* 06-0346, p. 8 (La. App. 4 Cir. 9/27/06), 941 So.2d 634, 640.
[103] *See Floyd v. Amite Cty. Sch. Dist.,* 495 F. Supp.2d 619, 627 (S.D. Miss. 2007) (citing *Carlisle v. Phenix City Bd. of Educ.,* 849 F.2d 1376, 1379 (11th Cir. 1988), *Tolefree v. Kansas City, Missouri*, 980 F.2d 1171, 1174 (8th Cir. 1992).
[104] *Kremer,* 456 U.S. at 483-85.
[105] *Id.* at 483-84.

stated above, the CSC Decision says that the CSC was concerned with whether the appointing authority had "good or lawful cause for suspending and terminating the classified employee and, if so, whether such discipline was commensurate with the dereliction."[106] However, whether the appointing authority had "good or lawful cause" for termination is not the standard in employment-related lawsuits.

The United States Supreme Court clarified this distinction in its 2020 *Bostock v. Clayton County* decision.[107] *Bostock* involved three plaintiffs who were each fired because they were either homosexual or transgender.[108] The primary issue was whether their firing constituted a violation of Title VII, specifically, 42 U.S.C. 2000e-2(a), which provides, in pertinent part:

> **(a) Employer practices. It shall be an unlawful employment practice for an employer—**
>
> > **(1)** to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
> >
> > **(2)** to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.[109]

The Supreme Court's initial analysis concerned whether "sex" includes merely biological sex or also extends to sexual orientation, gender identity, or transgender status. On that issue, the Court found that employers violate Title VII by taking adverse employment action based on an individual's sex, sexual orientation, gender identity, or transgender status.[110]

---

[106] Exhibit 15, Civil Service Commission Decision, at p. 11 (citing *Abbott v. New Orleans Police Dep't*, 2014-0993 (La. App. 4 Cir. 2/11/15); 165 So.3d 191, 197; *Walters v. Dept, of Police of the City of New Orleans*, 454 So. 2d 106 (La. 1984).
[107] *Bostock v. Clayton County,* 140 S. Ct. 1731 (2020).
[108] *Bostock v. Clayton County,* 140 S. Ct. 1731, 1737 (2020).
[109] 42 U.S.C. 2000e-2(a).
[110] *Bostock v. Clayton County,* 140 S. Ct. 1731, 1754 (2020).

However, the second part of the Court's analysis concerned the interpretation of "because of such individual's race, color, religion, sex, or national origin" (emphasis added).[111] Specifically, the question was whether the discrimination needed to be the *only* cause of the adverse employment action for there to be a Title VII violation or whether the discrimination need only be a *but-for* cause of the adverse action for there to be a violation.[112] Using an example, the Court explained, "if a car accident occurred *both* because the defendant ran a red light and because the plaintiff failed to signal his turn at the intersection, we might call each a but-for cause of the collision."[113] The Court further explained:

> When it comes to Title VII, the adoption of the traditional but-for causation standard means a defendant cannot avoid liability just by citing some *other* factor that contributed to its challenged employment decision. So long as the plaintiff's sex was one but-for cause of that decision, that is enough to trigger the law.[114]

Additionally, the plaintiff's sex need not be the sole or primary cause of the employer's adverse action.[115]

CNO's reliance on *Winn v. City of New Orleans*, is misplaced and the 2015 decision conflicts with the U.S. Supreme Court's 2020 *Bostock* decision.[116] *Bostock* effectively overturns the U.S. 5th Circuit's determination in *Winn* that "the state court's finding that Winn was terminated for legal cause 'implicitly and necessarily rejects 'Winn's contention that he was terminated for improper reasons…."[117] *Winn*, at the time, was based on the principle that if there were any cause for termination that did not constitute a Title VII violation, then the plaintiff's Title

[111] 42 U.S.C. 2000e-2(a).
[112] *Bostock v. Clayton County,* 140 S. Ct. 1731, 1739 (2020).
[113] *Bostock v. Clayton County,* 140 S. Ct. 1731, 1739 (2020).
[114] *Bostock v. Clayton County,* 140 S. Ct. 1731, 1739 (2020).
[115] *Id.* at 1735 (2020).
**[116]** *Id.*
**[117]** *Winn v. City of New Orleans*, 620 Fed. Appx. 273 (5th Cir. 2015) (citing *Winn v. New Orleans City*, CV 12-1307, 2015 WL 10713690, at *9 (E.D. La. Jan. 14, 2015).

VII causes of action would be "implicitly and necessarily reject[ed]."[118] *Bostock* clarifies that employers cannot avoid liability for Title VII violations even when there may be other causes for termination that do not constitute Title VII violations.

*Kremer* and *Bostock* are the appropriate cases to follow, and CNO's reliance on *Winn* is misplaced. Following the Supreme Court's analysis, Morales was not afforded a full and fair opportunity to litigate her claims of discrimination and retaliation. As such, *res judicata* does not apply to the CSC hearing and subsequent state court appeal, where the issues, legal standards, and facts were wholly different. Thus, the MSJ should not be granted.

### 3. None of Morales's Louisiana statutory law claims are barred.

CNO also seeks to dismiss Morales's claims under La. R.S. 23:967, Louisiana's Whistleblower Statute (Count 3). As established above, these claims were never litigated in, or determined by, the Civil Service Hearing Examiner. As the Hearing Examiner made clear at the hearing, "I will only say that the termination was based upon six listed violations, six different reasons that are set forth in the letter."[119]

There were no affirmative defenses and no opportunity for discovery. The CSC hearing was limited to the claims made in the termination letter and then further narrowed based on the OIG's assertion that the discipline was based on the iPhone donation; there was no opportunity to litigate Morales's Louisiana statutory law claims.

### 4. None of Morales's civil rights or due process claims are barred.

CNO seeks to dismiss Morales's claims of violations of her due process rights under Section 1983 (Count 4), gender and racial discrimination under Section 1981 (Count 6), and

---

[118] *Winn v. New Orleans City*, CV 12-1307, 2015 WL 10713690, at *9 (E.D. La. Jan. 14, 2015).
[119] Transcript, In the Matter of Kristen Morales v. Office of the Inspector General, Docket Number 9234/9240, hearing April 9, 2021, at p. 4:23-5:1, attached hereto as Exhibit 16.

conspiracy to deprive her of employment under Section 1985 (Count 9). However, none of these claims can be precluded under res judicata or collateral estoppel because Morales never litigated her claims against the City of New Orleans, it was not a party to the CS hearing and the limited jurisdiction of the New Orleans Civil Service Commission did not allow for those claims to be heard.

First as a threshold matter "the CSC does not have jurisdiction to hear §1983 claims."[120] In *Winn*, a case that CNO cites in its Memorandum, Judge Triche Milazzo clarified that "the [Civil Service Commission] merely has the 'power and authority to hear and decide all removal and disciplinary cases.'"[121] The CSC does not have jurisdiction over federal employment-related claims.[122] The Court ultimately found that the plaintiff's claim of free-speech retaliation was barred by issue preclusion because he would not be able to meet the fourth element of the claim.[123] *Winn* is distinguishable from this case, however, because Morales is not alleging free-speech retaliation, and Morales never litigated such a claim before the CSC.

Further, the court in *Winn v. City of New Orleans,* cites *Levitt v. Univ. of Tex. at El Paso* as support for the presumption that issue preclusion barred the First Amendment claim.[124] However, in *Levitt,* the plaintiff had already been in federal court where the court had ruled that the charges against him were not pretext and he had a full and fair opportunity to litigate the issues.[125] At the first trial he even testified about the bias and prejudice to which he was subjected.[126] The court noted that the complaint raised no new issues, which is why the first suit

---

[120] *Jackson v. St. Charles Par. Hous. Auth. Bd. of Comm'rs*, 441 F. Supp. 3d 341, 354 (E.D. La. 2020).
[121] *Winn*, 2015 WL 10713690 at *3 (citing La. Const. art. X, § 12).
[122] *Id.*
[123] *Id.*
[124] 620 Fed. Appx. 270, 272 (5th Cir. 2015).
[125] *Levitt v. Univ. of Texas at El Paso,* 847 F.2d 221, 228 (5th Cir. 1988).
[126] *Id.*

had preclusive effect.[127] Here, Morales has not had the opportunity to litigate any of her due process claims.

Similarly, in *Frazier v. King*, the U.S. 5th Circuit held that the plaintiff was not precluded from bringing a Section 1983 action even though she had challenged her termination before the CSC.[128] There, the Court wrote, "[res judicata] is not relevant where the original forum does not have the power to award the damages sought in the second action."[129] Based on the 5th Circuit's *Frazier* holding, the Court found in *Winn* that "it would be nonsensical to hold that the CSC's review of [Plaintiff's] termination now prevents Plaintiff from seeking a remedy that the CSC had no power to grant."[130] Accordingly, the Court found that res judicata did not apply.[131]

In yet another 5th Circuit case, *Garner v. Giarrusso*, the Court again declined to apply res judicata and collateral estoppel, stating two reasons:

> First, the scope of the administrative hearing was much narrower than that of [Plaintiff]'s lawsuit. Second, although the procedural safeguards afforded in the [New Orleans] Civil Service Commission hearing were satisfactory for its purpose, that body was not a competent forum for the resolution of federal claims of employment discrimination brought under Title VII and Section 1981.[132]

The Court further explained:

> Had the district court applied res judicata so as to bar [Plaintiff]'s subsequent lawsuit, manifest injustice would have occurred because [Plaintiff] would have been deprived of an opportunity to challenge the department's transfer, assignment, and re-evaluation practices.[133]

---

[127] *Id.*
[128] *Frazier v. King*, 873 F.2d 820, 824 (5th Cir. 1989).
[129] *Id.* at 825.
[130] *Winn*, 2015 WL 10713690 at *4.
[131] *Id.*
[132] *Garner*, 571 F.2d at 1336.
[133] *Id.* at 1336-1337.

Morales's claims in this lawsuit fall squarely within the confines of *Frazier* and *Garner*.[134] As the Court noted in *Frazier*, applying res judicata and collateral estoppel broadly to administrative proceedings would result in plaintiffs being unable to pursue administrative remedies without simultaneously jeopardizing their federal causes of action.[135] It would incentivize plaintiffs to bypass the administrative process, whereas limiting the application of preclusion doctrine in administrative proceedings would "encourage[e] plaintiffs to seek administrative remedies before turning to the federal courts."[136]

At the same time, the *Frazier* Court was wary of plaintiffs "escap[ing] Louisiana rules of res judicata by pleading separate and distinct relief in different lawsuits where both suits involve the same cause of action."[137] But the Court found, logically, that preclusion doctrine "is not relevant where the original forum does not have the power to award the damages sought in the second action."[138] The plaintiff in *Frazier* had not engaged in "artful pleading" to make it appear that the "'things demanded 'in her two actions differ." The Court reasoned, "limitations on the power of the [Louisiana Civil Service Commission] prohibited her from seeking complete damages in the [Louisiana Civil Service Commission] proceeding."[139]

The same principles outlined in *Garner* and *Frazier* apply to Morales's claims here. Just as in *Garner*, the scope of the New Orleans Civil Service Commission proceedings was much narrower than the claims made in Morales's lawsuit. Furthermore, just as the Courts noted in *Garner* and *Frazier*, the original administrative forum—the New Orleans CSC in Morales's case—

---

[134] While *Winn* is partially applicable here, the plaintiff's claims in that case—which were the basis for the court's dismissal under collateral estoppel—differ from Morales's claims in this lawsuit.
[135] *Frazier*, 873 F.2d at 824.
[136] *Id.*
[137] *Id.* at 825, citing *Lewis v. East Feliciana Parish School Board,* 820 F.2d 143 (5th Cir.1987); *Hernandez v. City of Lafayette,* 699 F.2d 734 (5th Cir.1983).
[138] *Id.*
[139] *Id.*

could not award the types of damages that Morales seeks in this lawsuit—"that body was not a competent forum for the resolution of federal claims…."[140] Accordingly, none of Morales's claims alleged in this lawsuit can be precluded by res judicata or collateral estoppel.

## IV.    Conclusion

Considering the preceding, none of Morales's claims can be precluded by collateral estoppel or res judicata. The City of New Orleans was not a party to the prior litigation and the New Orleans CSC does not have jurisdiction to hear the claims that are the subject of this lawsuit, cannot award the damages that Morales seeks in this lawsuit and did not provide an opportunity to be heard by a jury trial. The granting of the motion for summary judgment will deny Morales her Seventh Amendment right to a jury trial, Accordingly, Defendant's Motion for Summary Judgment should be denied in its entirety.

Respectfully Submitted,

*/s/ Stephanie Dovalina*
Stephanie Dovalina, LSBA #31137
700 Camp Street, Ste. 105
New Orleans, LA 70130
Phone No.: (504)528-9500
Mobile: (504) 442-4959
Fax: (504) 353-9516
stephanie@dovalinalawgroup.com
Attorney for Kristen Morales

## CERTIFICATE OF SERVICE

I certify that on April 18, 2023, a copy of this filing was served contemporaneously on all attorneys of record via the court's CM/ECF system.

*/s/ Stephanie Dovalina*

---

[140] *Garner*, 571 F.2d at 1336.